**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LARRY SCHREY,                        :
                                     :
            Plaintiff,               :      CIVIL ACTION
                                     :
      v.                             :
                                     :      NO. 09-cv-292
HAROLD LOVETT,                       :
                                     :
            Defendant.               :


## DECISION

**Joyner, C.J.**                                **November 17, 2011**

## BACKGROUND

Plaintiff Larry Schrey commenced the present action in
January, 2009 against Defendants Harold Lovett and Leslie Schrey
(now deceased and no longer a part of this litigation).
Plaintiff sued Defendant for allegedly breaching fiduciary duties
under the Employee Retiree Income Security Act ("ERISA"), 29
U.S.C. §§ 1001-114.  A non-jury trial was held on January 25,
2011.  At this time, the matter is ripe for disposition and the
Court now makes the following:

## FINDINGS OF FACT

1.  Defendant Harold Lovett and Leslie Schrey founded the
Bustleton Landscaping Company, Inc. ("the Company") in
approximately 1955.  (Stip. of Facts ¶ 1.)

2.  The Company established a tax-qualified pension plan in
approximately 1966.  Philadelphia Pension Planning Corporation

("PPPC") was retained to perform administrative services.  (Id.
¶¶ 3-4.)

3.  In 1976, the Company amended the pension plan and named
Defendant the "Administrative Authority."  (Pl.'s Ex. 8 at ¶
1.24.)

4.  When PPPC was hired in 1966, Bernard Berger was the
principal owner of PPPC.  In January 1989, Charleen Ryan became
dominant shareholder, president, and chief executive officer of
PPPC.  (Stip. of Facts ¶¶ 10-11.)

5.  In 1989, the Company converted the pension plan to a
profit sharing plan ("the Plan").  (Id. ¶ 5.)

6.  Plaintiff Larry Schrey was an employee of the Company
for about 41 years and retired in approximately 1996.  Plaintiff
was a participant, as the term "participant" is defined in ERISA,
29 U.S.C. § 1002(7), in both the older pension plan and more
recent profit sharing plan.  Plaintiff was fully vested in the
Plan upon his retirement.  (Stip. of Facts ¶¶ 2, 6-7.)

7.  Defendant and Leslie Schrey were both trustees and
participants of the Plan.  The trustees were authorized to make
investments, subject to the Company's direction and the direction
of its agents, and consistent with the Plan funding policy and
methods established by the Company.  (Id. ¶¶ 9, 16.)

8.  The trustees gave PPPC and Ryan full control over the
funds comprising the Plan assets.  (Id. ¶ 13.)

2

9.   The 2001 Plan description identifies the Company as the Plan administrator.  The description also expressly permits the administrator to "designate another person or persons to perform some duties of the Administrator."  (Def.'s Ex. 48 at p. DL-0662.)

10.   All annual reports filed with the Internal Revenue Service on Form 5500 from years 1975 to 2004 (with the exception of years 1979, 1982, 1983, 1987, 2000, and 2001, which do not appear in the record) indicate the Company is the Plan administrator.  (Pl.'s Ex. 10.)

11.   Pursuant to a 1991 application for an IRS determination letter, the Company published a Notice to Employees indicating that the Company is the Plan administrator.  (Def.'s Ex. 8 at p. DL-0059.)

12.   The trustees and Plan administrator relied on PPPC and Ryan to perform sundry duties, such as record-keeping, investment selection and management, and asset custody.  (Stip. of Facts ¶ 12.)

13.   Plan assets were invested in insured bank certificates of deposit.  PPPC would pool its clients' money to purchase the certificates and issue "Certificates of Ownership" showing the proportion of each certificate that each client owned.  PPPC employees maintained records and credited income to the Plan as it was earned, re-invested in certificates of deposit as

3

certificates matured, paid income into the Plan account, instructed the Plan on paying withholding amounts, prepared necessary 1099 forms and Form 5500 annual reports for the Plan, corresponded with the Internal Revenue Service for determination letters, and prepared Plan accounting reports.  (Id. ¶¶ 17-19.)

14.  At some point during the 1990s, unbeknownst to the trustees or Plan administrator, Ryan directed PPPC employees who managed Plan assets to stop investing the assets so that she could manage them herself.  Thereafter, Ryan diverted assets away from the Plan and by 1999 or 2000 there were no assets remaining in the Plan.  (Id. ¶¶ 20-21.)

15.  Ryan knew the Plan's assets were depleted and she knowingly concealed the loss from the Company, the Plan administrator and trustees and continued to produce records reporting that assets remained in the Plan.  (Id. ¶¶ 24-25.)

16.  As of December 2004, the Plan should have had assets of $804,402.79, according to the 2004 year-end report produced by Ryan.  (Id. ¶ 25.)

17.  Until some time in 2005, the trustees relied upon reports, accountings and tax returns provided by Ryan and PPPC. (Id. ¶ 28.)

18.  In 2005, the Plan was notified that withholding payments were overdue.  Defendant paid the overdue balance and hired legal counsel to investigate the propriety of PPPC's

management of the Plan.  When Defendant's counsel was unable to obtain the necessary information from Ryan, Defendant sued Ryan and PPPC in <u>Lovett v. Ryan</u>, Civ. No. 06-906 (E.D. Pa. June 22, 2006).  (<u>Id.</u> ¶¶ 33-34.)  In that action, Lovett identified himself as the Plan administrator as of 1976, and he admitted to delegating full responsibility for plan administration to PPPC and Ryan.  (Pl.'s Ex. 26 at ¶¶ 9-10.)

19.  In August, 2006, during the course of litigation in <u>Lovett v. Ryan</u>, Ryan admitted to Defendant the Plan's assets were completely dissipated.  (Stip. of Facts ¶ 26.)

20.  As recent as August, 2006 Ryan made income payments to Plan participants using PPPC funds.  Mr. Lovett continuously received monthly income distributions of $1168 from 1996 to 2006.  Leslie Schrey also received continuous monthly income distributions.  (<u>Id.</u> ¶¶ 29-30.)

21.  The Company ceased operations in October 2001.  At that time, several Plan participants elected to receive, and did receive, lump-sum distributions from what they were lead to believe were their individual account balances.  Plaintiff elected to leave his funds in the Plan.  (<u>Id.</u> ¶ 32.)

## DISCUSSION

A fiduciary is liable for breaches of any "responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]" and the Court may impose monetary damages and equitable relief.  29

U.S.C. § 1109.  A fiduciary is one who exercises discretionary
authority or control over the assets in an employee benefit plan.
Id. § 1002(21)(A).  There is no question Defendant was a
fiduciary as one of two designated trustees for the Plan.  See 29
C.F.R. § 2509.75-8 at D-3.  Defendant is held to a "reasonably
prudent man" standard of care:

> [A] fiduciary shall discharge his duties with
> respect to a plan solely in the interest of
> the participants and beneficiaries and . . .
> with the care, skill, prudence, and diligence
> under the circumstances then prevailing that a
> prudent man acting in a like capacity and
> familiar with such matters would use in the
> conduct of an enterprise of a like character
> and with like aims.

29 U.S.C. § 1104(a)(1).

As trustee, Defendant had a fiduciary duty to invest, manage
and control the Plan assets.  Defendant was reasonably prudent in
his role.  Plaintiff alleges that Defendant breached a fiduciary
duty by selecting and appointing Ms. Ryan as a fiduciary.  See
id. § 1105(c).  PPPC was the fiduciary in charge of managing the
Company's retirement plan for approximately 23 years before Ms.
Ryan became the dominant shareholder, president, and chief
executive officer of PPPC in 1989.  Nothing during those 23 years
suggested that PPPC would be unfit to manage the retirement plan
under Ryan's stewardship.  Plaintiff has not proven Defendant
breached his fiduciary duty by permitting the Plan's continued
relationship with PPPC.

Plaintiff also contends that Defendant breached a fiduciary duty by failing to monitor Ryan's and PPPC's performance, which ultimately led to the Plan's assets being plundered.  A trustee has a duty to manage and control the assets of a plan.  See id. § 1103.  Therefore, Defendant had a duty to ensure the Plan's assets were properly managed by Ryan and PPPC.  The depletion of the Plan's assets began in the 1990s but it is unclear when it specifically started; the assets were entirely depleted by 2000. During the 1990s, and thereafter, Ryan went to extraordinary lengths to conceal the depletion, making it highly unlikely Defendant would discover the missing assets.  Ryan made lump-sum distributions to several Plan participants and a continuous stream of monthly payments were distributed to Plaintiff, Defendant and other participants.  With annual reports and statements being issued and revealing no discrepancies, no further inquiry would have appeared necessary.  All the while, the Plan was devoid of assets.  A reasonably prudent trustee would not have suspected the Plan's assets were being mismanaged.

Plaintiff contends that Defendant should have asked Ryan to show him the actual bank certificates of deposit in which the Plan's assets were purportedly invested.  In hindsight, now knowing that the assets were not invested in certificates of

deposit, this appears obvious.[1]  However, "ERISA's fiduciary duty of care requires prudence, not prescience."  <u>Keach v. U.S. Trust Co.</u>, 419 F.3d 626, 638 (7th Cir. 2005); <u>accord</u> 29 U.S.C. § 1104(a)(1)(B) ("with the care, skill, prudence, and diligence under the circumstances *then prevailing* . . .").  Under the circumstances that existed at the time, Defendant managed the Plan's assets reasonably and prudently.

In 2005, Defendant was notified of delinquent withholding payments, raising his suspicion that the Plan's assets were not being properly managed by PPPC.  Defendant expediently hired an attorney to investigate, culminating in a lawsuit against PPPC and Ryan.  In 2006, through the course of litigation, Ms. Ryan admitted that the Plan's assets were gone.  Defendant's actions were prudent and reasonable under the circumstances.  When it became apparent that the security of the Plan's assets may be in question, Defendant took prompt and appropriate action.  Defendant did not breach a fiduciary duty to manage the Plan's assets.

Defendant was not liable as a co-fiduciary.  Ms. Ryan was a fiduciary of the Plan under ERISA.  <u>See</u> 29 U.S.C. § 1002(21)(A).  A fiduciary in Defendant's position is liable for the breaches of

---

[1]The seemingly obvious solution may not be the salient one.  Ryan fabricated dozens of official documents and presented them to the Company, participants and even the federal government.  If circumstances demanded it, Ryan ostensibly could have fabricated Certificates of Ownership as well.

a co-fiduciary under three narrow circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title [, the prudent man standard of care,] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Id. § 1105(a). First, there is no evidence that Defendant knowingly participated in or concealed Ms. Ryan's invidious behavior. Second, as previously explained, Defendant's actions were reasonably prudent under the circumstances. By complying with his duty under § 1104(a)(1), Defendant could not have enabled Ryan to commit a breach. Lastly, once Defendant had actual knowledge of Ryan's breach, he took reasonable steps to remedy the breach. See supra p. 8. Defendant is not liable as a co-fiduciary.

Plaintiff and Defendant disagree as to whether Defendant or the Company was the Plan administrator. The Company--not Defendant--was the administrator. The 2001 Plan description lists the Company as the administrator, as do nearly 30 years of annual reports filed with the IRS and the 1991 "Notice to Employees." Although a 1976 amendment to the Company's original pension plan lists Defendant as the administrator, all documents

since then indicate the Company was the administrator.  Defendant
may have once held the position but by 1991, the Company was
undoubtedly the administrator.[2]  Even if the Court were to find
that Defendant was the Plan administrator, the outcome of the
present action would not differ.  An administrator is not
required to continuously audit operational affairs.  A duty to
investigate arises when the administrator has some reason to
suspect impropriety; "there must be something akin to a 'red
flag' of misconduct."  Pugh v. Tribune Co., 521 F.3d 686, 699-700
(7th Cir. 2008).  When red flags made it apparent misconduct was
afoot, Defendant undertook prudent action.

    Plaintiff has failed to prove by a preponderance of the
evidence that Defendant breached a fiduciary duty owed to the
Plan.  In light of the foregoing, the Court now states the
following:

## CONCLUSIONS OF LAW

    1.  This Court has jurisdiction over the parties and the
subject matter of this action pursuant to 28 U.S.C. § 1331.

    2.  Plaintiff failed to prove Defendant breached any
fiduciary duty owed to the Bustleton Landscaping Company's
retirement plan under ERISA, 29 U.S.C. §§ 1001-114.

---

[2]Plaintiff notes that Defendant's 2006 complaint in Lovett v. Ryan
states Lovett was the Plan administrator.  The case resulted in a default
judgment against Ryan and the issue of who was Plan administrator was not
argued by the parties nor was it a basis for the court's ruling.  Lovett was
afforded relief as a Plan trustee.  See Lovett v. Ryan, Civ. No. 06-906 (E.D.
Pa. June 22, 2006).

10

3.   Judgment is properly entered in favor of Defendant and against Plaintiff in no amount.